AO 245B (Rev. 09/17)   Judgment in a Criminal Case

# UNITED STATES DISTRICT COURT

### District of Colorado

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **JUDGMENT IN A CRIMINAL CASE** |
| **v.** | ) | |
| | ) | |
| | ) | Case Number:    1:17-cr-00251-MSK-01 |
| ISMAIL ALKAN DUZYURT | ) | USM Number:    14322-179 |
| *a/k/a Al Paolo Duzyurt Lucci* | ) | |
| | ) | Timothy Patrick O'Hara, AFPD |
| | ) | Defendant's Attorney |

## THE DEFENDANT:

☒ pleaded guilty to count    1 of the Indictment

☐ pleaded nolo contendere to count(s) _____
   which was accepted by the court.

☐ was found guilty on count(s) _____
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 8 U.S.C. § 1326(a) and (b)(2) | Illegal Re-entry After Deportation Subsequent to an Aggravated Felony Offense | 11/23/16 | 1 |

    The defendant is sentenced as provided in pages 2 through ___7___ of this judgment in accordance with the findings and conclusions made in open court, a transcript of which is attached hereto and incorporated in by this reference.  The sentence is imposed pursuant the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____ ☐ is ☐ are dismissed on the motion of the United States.

    It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

January 11, 2018
Date of Imposition of Judgment

*Marcia S. Krieger*
Signature of Judge


Marcia S. Krieger, Chief United States District Judge
Name and Title of Judge

January 29, 2018
Date

AO 245B (Rev. 09/17) Judgment in Criminal Case

| | |
|---|---|
| DEFENDANT: ISMAIL ALKAN DUZYURT | Judgment — Page __2__ of __7__ |
| CASE NUMBER: 1:17-cr-00251-MSK-01 | |

# IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:
Twenty (20) months, to run consecutively to the sentence imposed in Eagle County District Court, Case No. 2016CR308.

☐   The court makes the following recommendations to the Bureau of Prisons:

☒   The defendant is remanded to the custody of the United States Marshal.

☐   The defendant shall surrender to the United States Marshal for this district:

    ☐   at _____   ☐   a.m.   ☐   p.m.   on _____ .

    ☐   as notified by the United States Marshal.

☐   The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐   before 2 p.m. on _____ .

    ☐   as notified by the United States Marshal.

    ☐   as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____   to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

AO 245B (Rev. 09/17) Judgment in Criminal Case

| | Judgment — Page | 3 | of | 7 |

DEFENDANT:           ISMAIL ALKAN DUZYURT
CASE NUMBER:        1:17-cr-00251-MSK-01

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of: three (3) years.

## MANDATORY CONDITIONS

1.    You must not commit another federal, state or local crime.
2.    You must not unlawfully possess a controlled substance.
3.    You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
       ☒   The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4.    ☐   You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5.    ☒   You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6.    ☐   You must comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq*.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7.    ☐   You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

AO 245B  (Rev. 09/17)  Judgment in Criminal Case

| | |
|---|---|
| DEFENDANT: | ISMAIL ALKAN DUZYURT |
| CASE NUMBER: | 1:17-cr-00251-MSK-01 |

Judgment — Page ___4___ of ____7____

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____    Date _____

AO 245B (Rev. 09/17) Judgment in Criminal Case

|  | Judgment — Page    5    of        7    |

DEFENDANT:          ISMAIL ALKAN DUZYURT
CASE NUMBER:       1:17-cr-00251-MSK-01

## SPECIAL CONDITIONS OF SUPERVISION

1.  If you are deported, you must not thereafter re-enter the United States illegally.  If you re-enter the United States legally, you must report to the nearest U.S. Probation Office within 72 hours of your return.

AO 245B (Rev. 09/17) Judgment in Criminal Case

| | | Judgment — Page | 6 | of | 7 |

DEFENDANT:  ISMAIL ALKAN DUZYURT
CASE NUMBER:  1:17-cr-00251-MSK-01

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on the following page.

| | **Assessment** | **JVTA Assessment*** | **Fine** | **Restitution** |
|---|---|---|---|---|
| **TOTALS** | $ 100.00 | $ 0.00 | $ 0.00 | $ 0.00 |

☐ The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss**** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| | | | |
| **TOTALS** | $ _____ | $ _____ | |

☐ Restitution amount ordered pursuant to plea agreement    $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ the interest requirement is waived for the    ☐ fine    ☐ restitution.

☐ the interest requirement for the    ☐ fine    ☐ restitution is modified as follows:

* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B (Rev. 09/17) Judgment in Criminal Case

| | |
|---|---|
| DEFENDANT: **ISMAIL ALKAN DUZYURT** | Judgment — Page ___7___ of ___7___ |
| CASE NUMBER: 1:17-cr-00251-MSK-01 | |

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A  ☐  Lump sum payment of  $ _____  due immediately, balance due

       ☐  not later than  _____  , or
       ☐  in accordance with  ☐  C,  ☐  D,  ☐  E, or  ☐  F below; or

B  ☒  Payment to begin immediately (may be combined with  ☐  C,  ☐  D, or  ☐  F below); or

C  ☐  Payment in equal  _____ *(e.g., weekly, monthly, quarterly)* installments of  $ _____  over a period of
     _____ *(e.g., months or years)*, to commence  _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

D  ☐  Payment in equal  _____ *(e.g., weekly, monthly, quarterly)* installments of  $ _____  over a period of
     _____ *(e.g., months or years)*, to commence  _____ *(e.g., 30 or 60 days)* after release from imprisonment to a
     term of supervision; or

E  ☐  Payment during the term of supervised release will commence within  _____ *(e.g., 30 or 60 days)* after release from
     imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F  ☐  Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

     Defendant and Co-Defendant Names and Case Numbers *(including defendant number)*, Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☐  The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) JVTA assessment, (8) penalties, and (9) costs, including cost of prosecution and court costs.

1         IN THE UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF COLORADO
2

Criminal Action No. 17-cr-00251
3

UNITED STATES OF AMERICA,
4

    Plaintiff,
5

vs.
6

ISMAIL ALKAN DUZYURT,
7

    Defendant.
8
_____

9            **REPORTER'S TRANSCRIPT**
          (Sentencing Hearing:  Order)
10
_____

11      Proceedings before the HONORABLE MARCIA S. KRIEGER,

12  Judge, United States District Court for the District of

13  Colorado, commencing at 1:22 p.m., on the 11th day of January,

14  2018, United States Courthouse, Grand Junction, Colorado.

15             **A P P E A R A N C E S**

16      PETER HAUTZINGER, Assistant U.S. Attorney, 205 North

17  4th Street, Suite 400, Grand Junction, Colorado, 81501,

18  appearing for the Government.

19      TIMOTHY O'HARA, Assistant Federal Public Defender, 633

20  17th Street, 10th Floor, Denver, Colorado, 80202, appearing for

21  the Defendant.

22

23

24          THERESE LINDBLOM, Official Reporter
        901 19th Street, Denver, Colorado 80294
      Proceedings Reported by Mechanical Stenography
25        Transcription Produced via Computer

1          (The following proceedings were had and entered of

2    record after the Court heard the arguments of counsel and

3    statement of defendant:)

4          THE COURT:  Okay.

5          Thank you.

6          I'll announce the sentence I intend to impose, and, of

7    course, counsel, you'll have the final opportunity to make

8    legal objections before judgment is entered.

9          If you believe that the sentence is premised upon

10   error or it raises an issue that you haven't had the

11   opportunity to research or address, I invite you to request a

12   continuance.

13         Imposition of a sentence in a federal criminal case is

14   governed by a number of statutes.  The umbrella statute is

15   18 U.S.C. Section 3553.  And in imposing sentence in this case,

16   as in all other cases, the Court is required to consider the

17   objectives and the factors set forth in the statute.  The

18   statute requires that the sentence imposed be sufficient but

19   not greater than necessary to satisfy a number of objectives:

20   The sentence must reflect the seriousness of the offense;

21   promote respect for the law; provide just punishment;

22   adequately deter criminal conduct; protect the public from

23   further crimes by the defendant; and provide the defendant with

24   needed educational or vocational training, medical care, or

25   other correctional treatment in the most effective manner.

1          To fashion a sentence that meets these objectives, the

2   statute directs the Court to consider the nature and

3   circumstances of the offense; the history and characteristics

4   of the defendant; the kinds of sentences that are available;

5   the sentence prescribed by the federal sentencing guidelines;

6   the need to avoid unwarranted sentence disparities among

7   defendants with similar records found guilty of similar

8   conduct.

9          At the beginning of the hearing last week, I noted the

10  documents that I had studied in preparation for this hearing; I

11  confirmed that counsel and the defendant had had adequate

12  opportunity to review and consider those documents; I asked

13  whether there was any additional ones that should be

14  considered.

15         There was only one dispute raised as to the factual

16  contents of the presentence report, and that dispute was raised

17  with regard to paragraph 42 of report, an objection to the

18  contents of that paragraph that suggested that the defendant

19  was not involved in his son's life.

20         With regard to that, I note the objection.  I assume

21  that the defendant was involved in the -- his son's life, even

22  though his ex-wife has a different perspective.  I was told

23  that that was a motivating factor for his return to the United

24  States; but, subsequently, that was not the basis of any

25  argument that was made.

1          I next asked whether there were any disputes as to the

2   calculation of the sentencing range recommended by the federal

3   sentencing guidelines as set out in the presentence report.

4   And the -- both the Government and the defense were somewhat

5   surprised as to how the guidelines were calculated, both in the

6   first report at Docket No. 27 and also subsequently in the

7   revised report at 34.

8          Now, before I deal with those calculations, I want to

9   address a notation that was made in the record at the last

10  hearing.

11         The form plea agreement that is used in this district

12  includes a statement of facts to which the parties stipulate.

13  And at the Rule 11 hearing, the defendant is advised that the

14  Court will treat those facts as true.

15         Under federal law, when the presentence report is

16  prepared, probation officers are authorized to investigate the

17  offense conduct and include those facts in the presentence

18  report as a matter of course.  I issue an order in every case

19  that prevents that.  I do that because I believe, as I say in

20  the order, it is inappropriate to conduct an independent

21  investigation into the offense behavior, because it would be

22  inconsistent with the parties' plea agreement and could

23  adversely affect the rights of the parties.

24         That language I drew from the practices of Judge

25  Matsch.  And I'm the only judge, I believe, who still does

 1   this.  But I do it because I believe the adversary process

 2   involving both the government and the defendant results in

 3   stipulated facts in a plea agreement which are sufficient to

 4   establish the elements of the crime charged.  But this is not

 5   intended to be a tool for cutting information out or depriving

 6   the Court of the pertinent information.  And this case

 7   demonstrates why that cannot happen.

 8         Because the parties did not like the calculation under

 9   the first presentence report, they submitted a supplement to

10   the plea agreement that contained other facts.  Not facts

11   pertinent to the offense conduct, but facts that were

12   purportedly helpful to the defendant in reducing the

13   calculation under the federal sentencing guidelines.  That was

14   inappropriate.

15         Now, I'll treat those facts as true for purposes of

16   sentencing now upon the belief that defense counsel advised his

17   client that the Court would do exactly that.  But it's

18   important that the facts that we rely on in the plea agreement

19   be those that are discussed at the Rule 11 hearing so that the

20   defendant is appropriately advised and that neither party tries

21   to skew the sentencing result by a careful calculation of what

22   facts are disclosed and what facts are not.

23         So that takes us, then, to the current presentence

24   report.  That's found at Docket No. 34.

25         The report prepared by the probation office starts out

1   with a calculation of the Base Offense Level for violation of

2   8 U.S.C. Section 1326(a).  There is no disagreement that the

3   Base Offense Level here is 8.  Then the -- and that is a Base

4   Offense Level of 8, both under the 2015 and the 2016

5   guidelines.

6            From that point on, the difference between the 2015

7   and the 2016 guidelines changes.  And it changes because of a

8   change in the guidelines themselves that became effective on

9   November 1, 2016.

10            The defense argues that the parties have stipulated

11   that the 2015 guidelines apply and the Court should apply the

12   2015 guidelines.

13            Let me start by saying, agreements between the parties

14   in the plea agreement as to what guidelines apply are not

15   binding on the Court.  Why?  Because it is a legal question,

16   one that's not subject to negotiation.  And so we turn to

17   the -- the question of whether or not it is the 2015 or the

18   2016 guidelines that apply.

19            Guideline 1B1.11(a) provides that the general rule is

20   that the Court shall use the guidelines manual in effect on the

21   date the defendant is sentenced.  That's where we start.  That

22   would be the 2016 guidelines.  But there is an exception to

23   this general rule, and that's found at 1B1.11(b), which states,

24   "If the Court determines that the use of the guidelines manual

25   in effect on the date that the defendant is sentenced would

1    violate the *ex post facto* clause of the Constitution, the Court

2    should, instead, make all guideline calculations according to

3    the manual in effect on the date that the offense of conviction

4    was committed."

5           If I assume, without necessarily finding, that a

6    November 2016 change in the guidelines would be one that could

7    activate an *ex post facto* concern, the guidelines would direct

8    that I apply the guideline manual in effect on the date that

9    the offense of conviction was committed.

10          So when was the offense committed?

11          The Tenth Circuit has held that the offense of illegal

12   reentry is a continuing offense that is committed continuously

13   until the defendant is found by federal authorities.  That

14   holding is found in *U.S. v. Villarreal-Ortiz*, at 553 F.3d 1326,

15   a Tenth Circuit 2009 decision.

16          The defendant's own briefing concedes he was not found

17   until November 23, 2016, by which time the 2016 guidelines

18   manual had taken effect.  Thus, even if the guideline 1B1.11(b)

19   applies, it, nevertheless, is appropriate to apply the 2016

20   guidelines manual, as that was the manual in effect at the time

21   the defendant committed the instant offense.

22          So that is the set of guidelines that we are using.  I

23   take note of the fact that both counsel believe that the change

24   in the calculation of the ultimate penalty is something that

25   can be considered when I'm looking at sentencing objectives and

1  sentencing factors under 18 U.S.C. Section 3553.

2       Turning back, then, to the calculation in the

3  presentence report.  The report finds that there are two

4  specific offense characteristics.  The first was -- is pursuant

5  to Section 2L1.2(b)(2)(B), that the defendant was ordered

6  deported or removed from the United States -- I'm sorry, before

7  the defendant was ordered deported or removed from the United

8  States for the first time, the defendant sustained a conviction

9  for a felony offense other than illegal reentry, for which the

10  sentence imposed was two years or more.

11       The report reads that the defendant was convicted of

12  money laundering and false statement to acquire a firearm and

13  received a time-served sentence after serving 31 months in

14  custody in the United States District Court, Southern District

15  of Texas, Case No. 02-cr-578-007.  And as a consequence, eight

16  levels are added.

17       The defense argues that this particular conviction

18  should not be counted.  It shouldn't be counted for at least

19  two reasons.  First, it's old.  Yes, it's old; but that doesn't

20  mean we don't count it.

21       The second reason is because we don't know how long

22  the sentence was.  And the general rule for reaching back on

23  prior sentences is that there is a ten-year time range if we're

24  considering sentences of a year and a month, but it's a 15-year

25  time range for a sentence of, here, 31 months in custody, time

1    served.

2           So the second argument that is made by the defense, as

3    I understand it, is that this really isn't a time -- this

4    sentence -- sentence -- I'm sorry.  This sentence is not a

5    prior sentence for purposes of Section 4A1.1.

6           My research on this issue, which is the only case law

7    that is offered here, comes from the Fourth Circuit and the

8    Tenth Circuit.

9           In the Fourth Circuit, *United States v. Jacobs*, at 400

10   Fed.Appx. 712, a 2010 case, addressed an issue with regard to

11   crediting a defendant for time served, and found that crediting

12   a defendant for time served does not equate to imposing a

13   sentence of probation.

14          Now, if it were a sentence of probation, it would fall

15   outside of 4A1.1, but it's not a sentence of probation.

16          *U.S. v. Melendez*, at 88 Fed.Appx. 529, a Third Circuit

17   decision in 2004, states that the term of imprisonment actually

18   imposed on a prior conviction was 448 days, and it was treated

19   as the term intended by the sentencing court.

20          Now, at that juncture, the defense argues that the

21   Court should not refer to any extrinsic evidence as to what the

22   length of the sentence was.  For that proposition, I don't know

23   what authority defense counsel is relying on, because none was

24   offered.  But it is clear that there was no objection to the

25   factual statements in the presentence report -- not extrinsic

1   evidence -- that the defendant was detained in the Texas case

2   for in excess of 975 days, or approximately 32 months.  It is

3   also undisputed that at the time sentence was imposed for the

4   conviction on the counts in that case, that it was a

5   time-served sentence.

6          And pursuant, then, to *United States v.*

7   *Rodriguez-Lopez,* at 170 F.3d 1244, a Ninth Circuit 1999 case, a

8   defendant's prior sentence to time served is properly placed

9   into the sentencing calculation, because it was the actual time

10  that was served.

11         Melendez was a prisoner for 448 days when he was

12  sentenced to time served, and that was treated as a sentence of

13  that amount of time.

14         So treating the sentence imposed in 2005 for crimes

15  committed in 2002 as a sentence of in excess of 32 months, the

16  objection to the calculation in the presentence report to the

17  specific offense characteristic under Section 2L1.2(b)(2)(B) is

18  overruled.  There are an additional eight levels under the 2016

19  guidelines that are added for the conviction of money

20  laundering and false statement to acquire a firearm.

21         There are another eight levels that are added as a

22  specific offense characteristic because the defendant was

23  ordered deported and removed from the United States, and after

24  that determination, he engaged in criminal conduct resulting in

25  the conviction of a felony offense.  Under Section

1   2L1.2(b)(3)(B), that results in an additional eight levels for

2   a specific offense characteristic.

3          There is no dispute that after he -- after the

4   defendant was deported or removed -- and he was removed, by his

5   own admission, in 2005 and 2012 -- he was convicted here in

6   Eagle County of ID theft, altering and making a written

7   instrument, forgery, a check commercial instrument, and theft,

8   and was sentenced on November 23, 2016, to 3.5 years of prison

9   in Eagle County District Court, Case No. 2016-cr-308.  That

10  results in an additional eight levels.

11         So there is an Adjusted Offense Level of 24.

12         The defendant gets the maximum reduction for

13  acceptance of responsibility of three levels reduction, and

14  that results in an offense level of 21.

15         Then there is an additional reduction because the

16  Government has asked for a fast-track reduction of three

17  levels, which further reduces the offense level to 18.

18         We turn, then, to the criminal history.  The criminal

19  history calculations result in nine criminal history points,

20  and they put the defendant in Criminal History Category IV.

21  But that's really not the whole story here.  It's helpful to

22  see this criminal history in the longitudinal perspective,

23  based upon other information that is not challenged in the

24  presentence report.

25         The defendant came to the United States when he was

1    first 17.  He lived with his uncle, and he played soccer and

2    went to school.  He came back on an F-1 visa to attend college,

3    but he had insufficient language skills, and so he left the

4    United States.  Then there is a gap.

5            In 2001, he got a work permit, but he was arrested in

6    2002 and placed in federal custody in the 2002 case in Texas.

7    After that was resolved with a time-served sentence, according

8    to his statement to me today, he was placed on supervised

9    release.  But he had no papers that allowed him to be here

10   lawfully in the United States, and so in 2005, he was removed.

11           He reentered the United States in 2009 at the

12   invitation of the federal government and stayed here for a

13   period of time on a permissive work visa.  Then he was deported

14   in 2012.  This is an overlay to the criminal history.

15           In 2002 he was charged with money laundering, false

16   statement to acquire a firearm -- and it's important to note,

17   that false statement was a representation that he was a U.S.

18   citizen when he was not.  That resulted in the convictions and

19   the time-served sentence.  He was then convicted in 2005 in

20   Texas state court of felony theft involving eight motor

21   vehicles.  In 2016, after he came back to the United States of

22   America, having been deported in 2012, he's charged with the

23   counts for which he was convicted in Eagle County.  Again,

24   theft, altering or making a written instrument, forgery.  That

25   resulted in a sentence of 3.5 years.

1          With a Criminal History Category of IV and a criminal

2    history -- and an offense level of 18, the guidelines recommend

3    incarceration of 41 to 51 months.  I'm sorry, not sure what the

4    fine amount is, because the amount I have here is not correct.

5          So let me ask our probation officer, what's the fine

6    amount?

7          *PROBATION OFFICER:*  Your Honor, it would be 10,000 to

8    100,000.

9          *THE COURT:*  For a level 18, criminal history IV?

10         *PROBATION OFFICER:*  Let me just check that again, Your

11   Honor.

12         Yes, Your Honor, it would be 10,000 to 100,000.

13         *THE COURT:*  Thank you.

14         Now, there are a number of arguments that are made

15   with regard to the criminal history category.  First of all,

16   the defense argues that the Court should depart under the

17   provisions of 2L1.2.  And in the 2016 guidelines, that is at

18   note 6.  This departure is requested because the defendant is

19   in state custody, he's here on a writ, and the defense argues

20   that there should be some departure in light of the fact that

21   the prosecution of the state case occurred before the

22   prosecution of the federal cause and, therefore, the state case

23   became criminal history for purposes of sentencing here.

24         What the note says is that "In a case where the

25   defendant is located by immigration authorities while the

14

1    defendant is serving time in state custody, whether for pre- or

2    post-conviction, for a state offense, the time served is not

3    covered by an adjustment for 5G1.3(b) and, accordingly, is not

4    covered by a departure under Section 5K2.23, discharged terms

5    of imprisonment.

6         "In such a case" -- and that's this case -- "the Court

7    may consider whether a departure is appropriate to reflect all

8    or part of the time served in state custody from the time

9    immigration authorities locate the defendant until the service

10   of the federal sentence commences, that the Court determines

11   will not be credited to the federal sentence by the Bureau of

12   Prisons.  Any such departure should be fashioned to achieve a

13   reasonable punishment for the instant offense."

14        The comment goes on to say that "Such a departure

15   should be considered only in cases where the departure is not

16   likely to increase the risk to the public from further crimes

17   of the defendant."

18        I have doubts about that.  If I assume that the

19   defendant will be deported and he will stay outside the United

20   States, then we don't have a risk to the public from further

21   crimes by the defendant.  But if I assume that he stays in the

22   United States, his track record here is not good.  He has tax

23   liens, which means he hasn't paid taxes.  He's been repeatedly

24   convicted of fraud, of theft, of forgery.  He's misrepresented

25   his status in the United States.  And the danger of these kinds

1    of crimes being committed in the future I think is substantial.

2          I see no legitimate activity that he can engage in to

3    support himself here in the United States, and it is of great

4    concern to me that he will commit crimes in the future.   I

5    also, taking into account his history, think that each time he

6    has been approached with regard to a request for cooperation

7    with the authorities, he's taken advantage of that.   That's a

8    help to the authorities in that case; but it suggests that he

9    has something that he knows or can share that would be useful

10   to the authorities, which suggests involvement in criminal

11   activity which is not reflected in his criminal history.

12         But I'll assume here this is the right kind of case to

13   think about this departure.   So if I think about this

14   departure, the guideline tells me to consider, among other

15   things, whether the defendant engaged in additional criminal

16   activity after illegally reentering the United States.   Yes, he

17   did, and very much the same kind of criminal activity he had

18   engaged in many years before, the last time he was here.

19         The seriousness of the additional criminal activity,

20   including whether he used violence and credible threats of

21   violence, and the like.

22         Now, the important word here is "including."   There

23   isn't any -- any use of violence or credible threats of

24   violence, or -- that were used in the Eagle County crime, but I

25   note that he had possession of a firearm in his 2002 conduct

1    that he obtained illegally.  And I note that the behavior is

2    strikingly similar.  Theft, forgery, misrepresentations,

3    fictitious instruments.  The crimes are very much the same in

4    2002 and 2016.

5              I'm also to consider whether the criminal activity

6    resulted in death or serious bodily injury; it did not.  And

7    I'm to consider whether the defendant was an organizer, leader,

8    manager, or supervisor of others in criminal activity.  I have

9    no evidence with regard to that.  And I'm to consider the

10   seriousness of the defendant's other criminal history.  It's

11   serious, and it's repetitive.

12             I therefore decline to impose a departure based upon

13   the fact that the defendant has time that he's served in state

14   custody that may or may not be considered by the Bureau of

15   Prisons.

16             In addition to the reasons I just gave for that, I

17   note that this is one of those situations where the defendant

18   was found in the custody of the state on state charges.  And

19   there is no indication that the government has skewed or

20   manipulated the prosecution or the ordering of the prosecution

21   between the state prosecution and the federal government

22   prosecution.  Were that the case, I might conclude differently;

23   but there is nothing to suggest that that's the case here.

24             The next request for departure is under Section 4A1.3.

25   That is the section that applies when there is a criminal

 1   history category that substantially over or underrepresents the

 2   seriousness of the defendant's criminal history or the

 3   likelihood that the defendant will commit other crimes.

 4          As I've noted, my view of this criminal history is

 5   it's consistent, the crimes are similar, they're over a long

 6   period of time, they most often involve deceit.  And I think

 7   the Criminal History Category of IV, although it is slightly on

 8   the high side, does not substantially overrepresent the

 9   seriousness of the defendant's criminal history.  I therefore

10   conclude that the calculation under the guidelines results in a

11   guideline range consonant with an offense level of 18 and a

12   Criminal History Category of IV.

13          Now, the question comes whether there should be a

14   variant sentence, whether the sentencing range of 41 to 51

15   months constitutes a sentence that meets the requirements of

16   18 U.S.C. Section 3553.  I find it does not.  It exceeds what

17   is necessary under 18 U.S.C. Section 3553.  And, therefore, I

18   intend to impose a variant sentence.  It is not the sentence

19   that the defense has requested.  It is a sentence that reflects

20   several things.

21          First of all, a significant change in the guidelines

22   and their calculations over 2016 and 2015.  This does not

23   result from sympathy for the defendant.  When you're breaking

24   the law, you can't choose when you're going to get caught.  And

25   whatever the law is when you get caught is what you're going to

 1   be held accountable for.  So you can't complain that the law

 2   enforcement personnel should have caught you earlier so that

 3   you could have gotten a lighter sentence.  But there is a

 4   substantial difference between the calculations under the 2016

 5   and 2015 guidelines that feature prominently when I look at a

 6   sentence that is necessary and sufficient to meet the

 7   sentencing objectives.

 8           In looking at the conduct here, this is not the

 9   situation where a man comes to the United States, is deported,

10   returns again, is deported, returns again, is deported.  This

11   is more nuanced, but there is no doubt in my mind that the

12   defendant here knew he was not supposed to be here.  He had

13   played with a wide variety of visas and attempted to change his

14   immigration status through a marriage and had cooperated with

15   law enforcement to be here.  So to say that he is

16   unsophisticated about the need to have permission to be in this

17   country would not be a correct statement.

18           I also take into account the fact that his

19   characteristics as reflected in the presentence report reflect

20   deceit at every turn, in his personal relationships, in his

21   business relationships, with regard to both of the large series

22   of felony convictions in 2002 and 2016.  And it appears that no

23   sentence, including the 32 months he spent in Texas, have

24   convinced him of the need to maintain honest dealings and

25   adherence to the law.

1    I also take into account the fact that there is no

2    overlap between his illegal reentry as a federal offense and

3    his state convictions in Eagle County that justify a

4    consecutive sentence.  And, indeed, to impose -- I'm sorry, a

5    concurrent sentence.  And, indeed, to impose a concurrent

6    sentence would send the wrong message.  There are two wrongs

7    here, two things that were illegal, and they each require

8    separate sentences that should run consecutively.

9    I'm not persuaded that the concern that the state

10    sentence is somewhat indeterminate should make this sentence

11    concurrent.  I think Mr. Duzyurt deserves a sentence for each

12    of the acts that he has committed that broke the law.

13    So taking into account all of these factors, I'm

14    inclined to turn the clock back a little bit to measure what it

15    is that we might have otherwise had as a sentence had the times

16    been slightly different.  And I agree with the Government's

17    analysis that if there were not the enhancements that were

18    added because of both the past conviction and the -- in 2002

19    and the past conviction in 2016, we would be looking at an

20    offense level of 10 with a Criminal History Category of IV.

21    And that would have resulted in a guideline range of 15 to 20

22    months.  That, to me, is appropriate, that range.

23    And in that range, Mr. Duzyurt's characteristics and

24    behavior, and, frankly, absence of remorse argues for a

25    sentence at the top end of that range, 20 months of

1   incarceration, to run consecutively to his state court

2   conviction in Eagle County.

3          So just to sum up, I intend to impose a special

4   assessment of $100, because there is one offense and the

5   statute requires it.  I do not intend to impose a fine because

6   he lacks the ability to pay one.  I intend to impose three

7   years of supervised release, with a singular special condition.

8   And that is, if he is deported, he not return to the United

9   States illegally.  And if he can return legally, he report to

10  the nearest United States Probation Office within 72 hours of

11  his return.

12         And let me be absolutely clear about why I'm doing

13  that.  It's as a deterrent.  I know that Mr. Duzyurt wants to

14  live in the United States, but want is not enough.  Compliance

15  with the law is required.  And this is to remind you that if

16  you come back illegally or you don't report when you're

17  supposed to, you can be punished for that, itself.  And that

18  means that if you come back illegally, you can be charged and

19  convicted for illegally reentering and, similarly, charged and

20  convicted with a violation of supervised release.  And two

21  sentences can be imposed, and they can run consecutively.  It's

22  a deterrence.

23         And I intend to impose a custodial term of 20 months

24  to run consecutively with the state court sentence.

25         Any need for clarification or further explanation?

 1             MR. HAUTZINGER:  Not for the Government.

 2             MR. O'HARA:  Your Honor, briefly.

 3             The Court said that -- I think I heard the Court

 4     correctly, that if it were calculating this under the -- well,

 5     the last statement the Court made about the alternative,

 6     agreeing with the Government.  If I could clarify as to what

 7     the Court said about that.

 8             THE COURT:  Just took into account the fact that there

 9     might -- there would have been a different result under the

10     2015 guidelines.  I did not calculate what they were and did

11     not intend to.

12             MR. O'HARA:  Okay.

13             Your Honor, may I just speak to Mr. Duzyurt?

14             THE COURT:  Sure.

15             (Off-the-record discussion between counsel and

16     defendant.)

17             MR. O'HARA:  Your Honor, is this the opportunity that

18     the Court is giving me in order to make any objections to the

19     Court's ruling?

20             THE COURT:  Yes.

21             MR. O'HARA:  Okay.

22             Then, Your Honor, I would object to the Court's use of

23     the 2016 guidelines for the reasons I've previously stated.  I

24     would object to the timing of the government's presentation of

25     its -- the days in custody, as that information was not

1    presented at the previous hearing.  I would object to the

2    Court's denial of the departures in this case for time

3    considered in state custody.

4          In support of its denial of that, the Court mentioned

5    a tax lien.  And, Your Honor, the way that the PSI is written

6    is that it is unknown if this lien remains unsatisfied --

7    reading from Paragraph 58 of Document 34.  My client has

8    informed me that it's his belief that that lien has been

9    satisfied.

10         *THE COURT:*  Doesn't matter.  It was imposed.

11         *MR. O'HARA:*  The -- it's my understanding, Your Honor,

12   that if the 2015 guidelines were used and -- well, that the

13   guideline range would likely be lower than that calculated by

14   the Court, more consistent with those guideline calculations

15   that we included in the plea agreement, two to eight or four to

16   ten months.  And I would object to the Court's -- the

17   consecutive nature of the Court's sentence.

18         If I may just have one moment to speak to my client,

19   Your Honor.

20         *THE COURT:*  You may.

21         *MR. O'HARA:*  Thank you.

22         (Off-the-record discussion between counsel and

23   defendant.)

24         *MR. O'HARA:*  Thank you, Your Honor.  That's all I

25   have.

1        *THE COURT:* Thank you.

2        Mr. Duzyurt, please join your counsel at the lectern.

3        Having announced the sentence that I believe comports

4    with the sentencing objectives of 18 U.S.C. Section 3553, and

5    pursuant to the Sentencing Reform Act of 1984, it is the

6    judgment of the Court that the defendant, Ismail Alkan Duzyurt,

7    be committed to the custody of the Bureau of Prisons to be

8    imprisoned for a period of 20 months.  His sentence will run

9    consecutively to the pending -- sentence that has been imposed

10   in the Colorado Eagle County case.

11       Upon release from imprisonment, he will be placed on

12   supervised release for a term of three years.  If he is not

13   deported, he'll -- within 72 hours of release from the custody

14   of the Bureau of Prisons, he'll report in person to the

15   probation office in the district to which he is released.

16       While on supervision, he will not commit another

17   federal, state, or local crime and will not unlawfully possess

18   a controlled substance or a prohibited firearm.

19       I waive the mandatory drug testing provisions of

20   18 U.S.C. Section 3563 because it is likely that the defendant

21   will be deported.  However, he will cooperate in the collection

22   of DNA as directed by the probation officer.

23       And I impose a special condition, but not the standard

24   conditions imposed by General Order 2016-1.  The special

25   condition is that if he's deported, he will not thereafter

1    reenter the United States illegally.  If he reenters the United

2    States legally, he must report to the nearest United States

3    Probation Office within 72 hours of his return.

4          No fine is imposed for the reasons stated.  A special

5    assessment of $100 is imposed and is due and payable

6    immediately.

7          Mr. Duzyurt, I advise you of your right to appeal this

8    sentence if you reserve that right in your plea agreement.  In

9    order to exercise such a right, you must file a notice of

10   appeal within 14 days after entry of judgment or you lose that

11   right to appeal.  If you're unable to afford an attorney for an

12   appeal, one could be appointed to represent you.  That requires

13   the filing of a timely notice of appeal.  Mr. O'Hara usually

14   takes care of that for you.  But if for some reason he's unable

15   or unwilling to do so, you may request and I'll direct that the

16   Clerk of Court file a notice of appeal on your behalf.

17         Is there any further business to bring before the

18   Court?

19         *MR. HAUTZINGER:*  Not from the Government, Your Honor.

20         *MR. O'HARA:*  Your Honor, just for clarification.  Is

21   the Court considering Document 29, which is the supplemental

22   facts admitted for purposes of this hearing?

23         *THE COURT:*  Yes.

24         *MR. O'HARA:*  Okay.  Thank you.

25         Then I have nothing further.

1          THE COURT:  Thank you.

2          Then the defendant will be remanded to the custody of

3    the United States Marshal Service.  We'll stand in brief

4    recess.  I understand we have a verdict in the other case, and

5    so we'll reconvene as soon as we can.

6          (Recess at 3:10 p.m.)

7

8

9                    REPORTER'S CERTIFICATE

10      I certify that the foregoing is a correct transcript from
the record of proceedings in the above-entitled matter.

11

12          Dated at Denver, Colorado, this 17th day of January,
2018.

13

14                          _Therese Lindblom_

15                          _____
                            Therese Lindblom,CSR,RMR,CRR

16

17

18

19

20

21

22

23

24

25